IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>DAVID BERNARD TODD, III )<br>)<br>Defendant. )<br>) | Civil Action No. 3:05-cr-00090<br><br>Judge Thomas A. Wiseman, Jr. |

**MEMORANDUM OPINION**

Before the Court is Defendant Gregory Bernard Todd, III's Motion to Suppress evidence found at his residence located at 2390 Bellevue Manor Drive (Doc. No. 30), filed along with a supporting memorandum (Doc. No. 31). The Government has filed a response in opposition (Doc. No. 38), and this Court held a hearing on the issue on June 6, 2006.

Defendant seeks to suppress the fruits of a search that ultimately led to his indictment for bank fraud, wire fraud and money laundering. (See Indictment, Doc. No. 1.) Two main issues arise from Defendant's motion: (1) whether the affidavit supporting the search warrant set forth sufficient facts to establish probable cause, and (2) if not, whether the search is valid under the "good-faith" exception to the exclusionary rule announced by the United States Supreme Court in United States v. Leon, 468 U.S. 897 (1984).

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

State court judge Cheryl L. Blackburn issued the warrant in question which directed officers to a two-story brick home located at 2390 Bellevue Manor Drive ("Bellevue Residence") in Nashville, Tennessee. The warrant authorized the search of Defendant and "any other persons found [in the residence]," and the seizure of all records and accounting information from that house. The issuing judge based the warrant on a supporting affidavit sworn by Investigator Stanley A. Jablonski, who is a criminal investigator with five and a half years of experience in the criminal-fraud field. The affidavit outlines Jablonski's investigation into the sale of the Bellevue Residence from Loraine Todd—who is Defendant's mother and title holder of the property—to Younus and Narseen Razzaq. More specifically, it details facts indicating Defendant's involvement in real estate and mortgage fraud relating to that sale.

Jablonski's investigation began when corporate security officers from First Tennessee Bank contacted him about Defendant's role in securing a mortgage for the Razzaqs. Explaining that he was working for a mortgage broker, Defendant had represented to bank officials that the Razzaqs desired to obtain financing for purposes of purchasing the Bellevue Residence. Purportedly to assist in facilitating the sale, Defendant provided copies of the Razzaqs' personal accounting papers, including a 2002 federal income tax 1040 form showing an adjusted gross income of $388,446 for that year. Jablonski, however, obtained the Razzaqs' tax forms from the internal revenue service showing an adjusted gross income of $20,822 in 2001 and $6,724 in 2002. Jablonski also received information that Younus Razzaq was employed as a banquet server at the Sheraton Music City hotel in Nashville from December 1998 to December 2003.

On January 6, 2004, Loraine Todd signed the closing documents for the sale of the Bellevue Residence to the Razzaqs. The contract called for a sale price of $1.2 million, but an independent appraisal conducted a month later valued the property at somewhere between $600,000 and $700,000. The contract also included a financing agreement which provided for the Razzaqs to pay $248,581 toward the purchase price at closing. Additionally, the balance was to be financed through two mortgages, one for $720,000 secured by First Horizon Home loans and a second for $240,000 secured by First Tennessee Bank.

On January 7, 2004, the Razzaqs signed the closing contract. However, they did not make the down payment or take possession of the property. Also, the first month's mortgage payments were made by Defendant with checks drawn on his personal checking account at US Bank. On January 9, 2004, at Defendant's request and after receiving disbursement authorization from First Tennessee Bank, the closing agent obtained two cashier's checks for disbursement as seller's proceeds in the amounts of $248,581.06 and $174,221.08.

Later, the closing agent contacted the Razzaqs to sign another deed of trust for the First Tennessee Bank mortgage because the type on the first deed was too small to be entered by the Register of Deeds.. The Razzaqs refused to sign, explaining that Defendant only had paid $25,000 of the $50,000 he promised that he would pay them after the closing.

Based substantially on those facts, Jablonski sought a search warrant for the Bellevue Residence submitting that "[a]ffiant knows [Defendant] to have been living alone . . . [at the Bellevue Residence] for the past year." The judge issued a search warrant which yielded assorted financial records, computers, check

2

books, and "forged 1040 IRS forms." (Doc. No. 30, Ex. A.)

Following indictment on federal charges growing out of the execution of the warrant, Defendant filed a motion to suppress the fruits of the search of the Bellevue Residence arguing that Jablonski's affidavit fails to establish probable cause as required by the Fourth Amendment. Specifically, Defendant claims that the affidavit fails to set forth facts establishing a nexus between the alleged bank fraud and the Bellevue Residence. In addition, Defendant argues that the "good faith" exception to the probable cause requirement does not apply in this case, because the affidavit at issue is so lacking in indicia of probable cause as to render official belief in it entirely unreasonable. These arguments are addressed below.

## II. DISCUSSION

### A. Probable Cause and the Nexus Requirement

The Fourth Amendment to the United States Constitution guarantees that "no Warrant shall issue, but upon probable cause, supported by Oath or Affirmation." U.S. Const. amend. IV. When determining whether probable cause exists, magistrates charged with issuing a search warrant should apply a "common-sense" standard and decide whether the totality of the circumstances set forth in the supporting affidavit establish "a fair probability that contraband or evidence of a crime will be found in a particular place." Ill. v. Gates, 462 U.S. 213, 238 (1984). In other words, the facts and circumstances must create a "nexus" between the evidence sought and the place to be searched. United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004). The duty of a reviewing court is "simply to ensure that the magistrate had a *substantial basis* for concluding that probable cause existed." Gates, 462 U.S. at 238-39 (emphasis added). This Court's review of the sufficiency of the evidence supporting probable cause is limited to the four corners of the affidavit. United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005).

Defendant contends that Jablonski's affidavit failed to establish a substantial basis for concluding that a sufficient "nexus" existed between the alleged bank fraud and the Bellevue Residence. He argues that the affidavit lacks facts explaining why or how Jablonski knew that Defendant resided there and why evidence of the alleged fraud would be found at the Bellevue Residence. Defendant submits that, as written, the affidavit requires inferences too attenuated to provide a substantial basis for finding probable cause.

The Sixth Circuit previously has explained that magistrates do not have unbridled freedom to draw inferences about the probable location of evidence. United States v. Schultz, 14 F.3d 1093, 1098 (6th Cir.

3

1994).  In Schultz, the police had "more than good reasons to believe that a crime had been committed."  Id. at 1097.  Officers had already arrested one suspect who identified the defendant as his local source for drugs.  Id.  From other suspects, police learned that the supplier had a Jamaican connection and owned an ice cream business.  Further investigation revealed that defendant owned an ice cream business, had a prior conviction for possession of marijuana, and had given out a phone number from which calls had been made to Jamaica.  Id.  Police also learned that defendant owned a safety deposit box in Cincinnati, Ohio.  In a search warrant for that box, the supporting affidavit provided the following "nexus" between the marijuana sales and the box:  "Based on his training and experience, [the detective] believe[d] . . . that it is not uncommon for the records, etc. of such [drug] distribution to be maintained in a bank safe deposit box."  Id. While recognizing that "training and experience" are valid considerations when evaluating probable cause, the court concluded that "training and experience" alone do not establish an evidentiary nexus between the alleged criminal activity and the place to be searched.  Id.  Noting that the officer was simply guessing that the safety deposit box might contain evidence, the court warned that "[t]o find otherwise would be to invite general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose."  Notwithstanding, despite finding an insufficient "nexus," the court denied suppression under the good-faith exception, id. at 1098, as discussed in Section II.B. below.

However, in a more recent case, United States v. Abboud, 438 F.3d 554 (6th Cir. 2006), the Sixth Circuit upheld the search of a defendant's home and business for the search of records relating to bank fraud on the basis of probable cause.  There, the court found that it was only reasonable to infer that one would store such evidence at his or her residence:  "One does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home.  Likewise, personal financial records are usually stored at a person's home or place of business."  Id. at 552.  The affiant, a seasoned FBI agent whose primary concentration was financial crimes, provided insight as to the probable location of the records sought, and the court concluded that the issuing magistrate properly relied on the agent's professional insight.  Id.

As demonstrated by the Schultz and Abboud opinion, the probable cause inquiry necessarily involves inferences, particularly when evaluating the "nexus" between the place to be searched and the evidence

4

sought. The Court recognizes that the scope of the inference here—between the alleged bank fraud and the Bellevue residence—presents a very close call for the determination of probable cause. Admittedly, the affidavit does not detail why Jablonski believed that Defendant would store evidence of bank fraud at his residence. However, as noted by the Abboud court, it is reasonable to infer that a Defendant would store such evidence at his residence, and the affidavit does provide a detailed description of the home, a statement establishing that Jablonski knew Defendant resided there alone, and numerous details connecting the Defendant with a crime involving the same property involved in the bank fraud scheme detailed in the warrant. Based on the totality of the circumstances set forth in the affidavit, the Court concludes that the issuing judge had a substantial basis for believing probable cause existed. See Abboud, 438 F.3d at 552; United States v. Hang Le-Thy Tran, 433 F.3d 472, 481 (6th Cir. 2006)(affirming that probable cause existed where the affidavit established that the defendant lived at the residence, supplied a detailed description of the residence and the alleged crime and stated that the affiant believed evidence would be located in the residence); United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991)(noting that the Magistrate could "reasonably infer" drugs would be found at the defendant's residence where the affidavit established a "fair probability" that defendant was involved in drug trafficking"). See also United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir. 1985)("The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit."); United States v.Servance, 394 F.3d 222, 229)(4th Cir. 2005)(finding probable cause to search an apartment leased to a third party where the affidavit established that the defendant resided there even though the affidavit did not link the crime to the apartment); United States v. Hughes, 823 F. Supp. 593, 600 (N.D. Ind. 1993)(finding that it was reasonable for the magistrate to infer that evidence of a "complicated" and "detail-oriented" fraudulent scheme would be kept at the defendant's residence).

    **B.**  **The Good-Faith Exception to the Exclusionary Rule**

Regardless, even if the affidavit were found to fall short of establishing a sufficient nexus, suppression is not warranted in this case pursuant to the Supreme Court's decision in United States v. Leon, 468 U.S. 897 (1984). There, the Court established the "good-faith" exception to the exclusionary rule for evidence seized in "reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." Id. at 905. The standard for good-faith reliance is less than that necessary to satisfy the

"substantial basis" threshold necessary for proving probable cause. Washington, 380 F.3d at 241.

Thus, for example, in United States v. Carpenter, a search warrant was upheld under the "good faith" exception where police had obtained a warrant for the search of the defendant's residence after a police lieutenant who was conducting helicopter surveillance observed a marijuana field growing approximately 900 feet away from the defendant's residence. Carpenter, 360 F.3d at 596. The officer also observed a path connecting the residence's back door and the marijuana field, which lead police to obtain a search warrant for the residence. The court concluded that, although the connecting path between the marijuana fields and residence was insufficient to establish probable cause, it provided a good-faith basis for executing police officers to believe that probable cause existed. Id. at 595. Likewise, in Schultz, the defendant's involvement in criminal activity and his ownership of the safety deposit box were insufficient to support a finding of probable cause; the nexus, however, was not so remote as to render the officer's reliance unreasonable. Schultz, 14 F.3d. at 1098.[1]

Defendant argues that the good faith exception does not apply in the case at bar, on the basis of an exception to the exception articulated in Leon. More specifically, Defendant argues that the good faith exception does not apply because Jablonski's affidavit, he contends, is merely "bare bones."[2] A "bare bones" affidavit is one that lacks any reasonable "indicia of probable cause" because it only "states suspicions, or conclusions, without providing some underlying factual circumstances regarding the veracity, reliability, and

---

[1] See also Washington, 380 F.3d 236, 243 (6th Cir. 2004)(assuming that probable cause was not established but upholding search under the good-faith exception where the affidavit stated probable cause to believe the defendant committed the crime, that defendant emerged from residence immediately prior to a drug deal, and that defendant's car was seen parked at residence); United States v. Van Shutters, 163 F.3d 331, 336 (6th Cir. 1998)(upholding a search where the affidavit underlying the warrant described the residence, the items sought, and the defendant's counterfeiting scheme but connected the place to the illegal activity only by stating that the residence "was available" to the defendant).

[2] Leon, while establishing the good faith exception, also carved out four specific situations in which the exception would not apply because it would be unreasonable under the circumstances for the executing officer to rely on the warrant's validity:
    1. where the affidavit contains information the affiant knows or should have known to be false;
    2. where the issuing magistrate wholly abandoned his or her judicial role;
    3. where the affidavit was so lacking in indicia of probable cause as to render official belief in it entirely unreasonable.
    4. where the warrant was so facially deficient that the executing officers cannot reasonably presume it to be valid.
Laughton, 409 F.3d at 749 (citing Leon, 468 U.S. at 914-23). Only the third exception to the exception is relevant here.

basis of knowledge." Washington, 380 F.3d at 241 (quoting Van Shutters, 163 F.3d 331, 337 (6th Cir. 1998)).

The good faith exception was held not to apply in the Laughton case, where the court found the affidavit in question was such a "bare bones" affidavit. In that case, however, the affidavit at issue failed to make any connection between the address given and the criminal activity, or between the address given and the Defendant. Laughton, 409 F.3d at 749. In order to fill the gaps and conclude that probable cause existed, executing officers would have to draw an excessive number of inferences. Id. The court concluded that such deficiencies resulted in a completely invalid warrant lacking even an "indicia of probable cause." Id. at 750.

The affidavit at issue in this case is not, by any stretch of the imagination, a "bare bones" affidavit. Although the affidavit here required an inference that Defendant would keep evidence of bank fraud at his residence, it—unlike the Laughton affidavit—plainly sets forth details supporting such an inference. First, Jablonski stated that he knew Defendant to be residing alone at the Bellevue Residence, which established a connection between Defendant and the place to be searched. Second, the affidavit provides extensive details of the thorough investigation conducted by Jablonski, which turned up many facts supporting probable cause to believe that Defendant had engaged in bank fraud. Cf. Washington, 380 F.3d at 243 (noting, in support of finding the good-faith exception applicable, that the warrant stated sufficient probable cause to believe defendant had committed a crime). Finally, the type of crime at issue—bank fraud—supports the reasonable inference that evidence involving that crime would be found at Defendant's home, the Bellevue Residence. These details amount to more than mere suspicions or conclusions drawn without any sort of factual basis. As such, the affidavit was not "so lacking in indicia of probable cause" to prevent application of the good-faith exception to this case.

### III.     CONCLUSION

The Court finds that the issuing Judge had a substantial basis for concluding that there was probable cause to issue the warrant. Even if such probable cause were lacking, the good-faith exception would apply

7

under these facts. Per Order already announced in open court and for the reasons set forth herein, the Court finds that the warrant was valid, and the Defendant's motion to suppress must be **DENIED**.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge